Submitted on petition January 31, filing denied June 22, 1972,
appeal filed in the U. S. Supreme Court

# ORTWEIN ET AL, *Petitioners, v.* SCHWAB ET AL, *Respondents.*

498 P2d 757

John A. Strait, Portland, and D. Richard Fischer, Eugene, for the petition.

Lee Johnson, Attorney General, John W. Osburn, Solicitor General, and A. J. Laue, Assistant Attorney General, Salem, contra.

DENECKE, J.

Petitioners have attempted to file a petition in this court for a writ of mandamus, commanding the Court of Appeals to accept, without payment of the $25 filing fee, a petition for review of administrative orders. They request they be permitted to file the petition without payment of the filing fee for this court. Petitioners filed affidavits stating facts indicating indigency and alleging they were unable to pay the filing fee in either court.

Petitioners are welfare recipients and seek judicial review of decisions of the State Welfare Division reducing their welfare payments. ORS 183.480 provides that a person adversely affected by a final

administrative order is entitled to judicial review of such order. In cases such as this the review is before the Court of Appeals.

Petitioners contend that the statutes requiring filing fees of these indigents are invalid as they are contrary to the first and fourteenth amendments to the United States Constitution and Art I, § 10, of the Oregon Constitution.[1]

Petitioners' first amendment contention is grounded upon that part of the amendment prohibiting abridging the right "to petition the Government for a redress of grievances."

This phrase of the First Amendment emerged into popularity in Mr. Justice Black's majority opinions in *Railroad Trainmen v. Virginia Bar.*, 377 US 1, 84 S Ct 1113, 12 L Ed2d 89 (1964), and *Mine Workers v. Illinois Bar Assn.*, 389 US 217, 88 S Ct 353, 19 L Ed2d 426 (1967). These decisions held that the rights of workers to associate for the selection of legal counsel was a right protected by the First Amendment, including the right to petition clause.

Based upon the issues in those decisions, later decisions concerning the right of access to the courts without paying filing fees, which do not mention such clause, and our understanding of the historical background of that clause, we are of the opinion that the First Amendment is not relevant to our present inquiry.

Petitioners contend requiring filing fees of in-

---

[1] "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation." Art I, § 10, Oregon Constitution.

digent petitioners would violate the due process clause of the Fourteenth Amendment. Petitioners rely primarily upon *Boddie v. Connecticut,* 401 US 371, 91 S Ct 780, 28 L Ed2d 113 (1971), and *Frederick v. Schwartz,* 402 US 937, 91 S Ct 1624, 29 L Ed2d 105 (1971).

*Boddie v. Connecticut,* supra (401 US 371), was an action by welfare recipients challenging state statutes requiring the payment of court fees and the costs of service of process required in divorce proceedings. The majority held the statutes unconstitutional as applied to appellants. In the opinion, written by Mr. Justice Harlan, the Court concluded that the Due Process Clause was violated. The requirement of filing fees from indigents would deprive the indigents of access to the courts. Mr. Justice Harlan wrote that there were two reasons why this result would violate the Due Process Clause: First, the state court is the only forum that can change the status of marriage; in other types of disputes other means of solving the disputes are available. Second, "that due process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." 401 US at 377.

The majority went on to find that the state's interest in requiring filing fees was to prevent frivolous litigation and to help pay the cost of operating the judiciary. It concluded this was not "a countervailing state interest of overriding significance."

Mr. Justice Douglas concurred, but based his opinion upon equal protection. Mr. Justice Brennan concurred that the state violated due process; however, he would not limit the ruling to divorce cases. Mr.

Justice Brennan also believed the statutes as applied to the appellants violated the Equal Protection Clause. Mr. Justice Black dissented.

In *Frederick v. Schwartz,* 296 F Supp 1321 (D Conn 1969), welfare recipients attempted to appeal from rulings of the state welfare commissioner to the state circuit court. The filing fee for the circuit court was $7 and the plaintiffs sought to have it waived because of their indigency. The clerk of the court refused. An action was brought in Federal District Court, seeking to hold invalid the statutes requiring the fee. A three-judge court was empaneled. This was prior to the decision of the United States Supreme Court in *Boddie v. Connecticut,* supra (401 US 371). The three-judge court held:

"* * * Ordinarily there is no constitutional right to judicial review of administrative action * * *. Where the right has been granted by the legislature it may be conditioned on the payment of a modest filing fee because of the legitimate interest of the state in financial support of the courts and in discouraging frivolous appeals by those able to pay as well as those unable to do so. * * *." 296 F Supp at 1322.

This was the same three-judge panel that previously decided in *Boddie v. Connecticut,* 286 F Supp 968 (D Conn 1968), that the Connecticut statute requiring a filing fee for divorces was valid as applied to indigents. The court relied upon the *Boddie* opinion in deciding in *Frederick v. Schwartz,* supra (296 F Supp 1321), that the requirement of a filing fee was valid, even as applied to indigents.

*Frederick* was appealed. The ruling of the United States Supreme Court was: "Judgment vacated and case remanded for reconsideration in light of this

Court's decision in *Boddie v. Connecticut* [citation]."
402 US at 937. Mr. Justice Black wrote an opinion.
He stated that while he dissented in *Boddie v. Connecticut, supra* (401 US 371), that case established
what was now the law and he did not believe the
*Frederick* case was distinguishable.

The three-judge Federal District Court ordered
a rehearing of *Frederick v. Schwartz* and thereafter on
September 24, 1971, ordered the Connecticut circuit
court to accept the appeals from the welfare commissioner without requiring the payment of filing fees.[2]

The *Boddie* case is distinguishable. In that case
petitioner's marital status could only be changed by a
court. The other party's consent would be insufficient
and, under the state of the law, no administrative tribunal nor any other institution could change the
marital status. In our case, the State Welfare Division
can decrease petitioners' welfare benefits. Access to
the courts is only sought when the welfare recipient
desires that another body review the decision of the
Welfare Division.

*Frederick v. Schwartz, supra* (402 US 937), appears identical to the instant case; however, the action
of the United States Supreme Court is ambiguous. If
a majority of that Court was of the opinion that the
case had been incorrectly decided it could have reversed summarily, which it did not do.

We conclude that the decisions of the United
States Supreme Court do not direct what our decision
must be.[3]

---

[2] No opinion has been published and this information was
obtained from the clerk's office.

[3] The writers are also perplexed by the Court's decisions in
*Boddie* and *Frederick. The Supreme Court, 1970 Term,* 85 Harv

As stated, this is an attempted appeal from an administrative agency. We have held that due process does not require a right of appeal from a trial court to an appellate court in either criminal or civil cases. *Gairson v. Gladden,* 247 Or 88, 425 P2d 761 (1967); *Rea v. Rea,* 195 Or 252, 278, 245 P2d 884, 35 ALR2d 612 (1952). The United States Supreme Court has also so held in both criminal and civil cases. *National Union v. Arnold,* 348 US 37, 43, 75 S Ct 92, 99 L Ed 46 (1954); *Dist. of Columbia v. Clawans,* 300 US 617, 627, 57 S Ct 660, 81 L Ed 843 (1937).

We have also stated and held that due process does not demand that there be judicial review of administrative decisions. *Inland Nav. Co. v. Chambers,* 202 Or 339, 350, 274 P2d 104 (1954); *White v. State Ind. Acc. Com.,* 227 Or 306, 324-325, 362 P2d 302 (1961). The United States Supreme Court has not been as positive. Kenneth Culp Davis heads one of the sections of his treatise on administrative law, "Does Due Process Require Opportunity for Judicial Review of Issues of Law?", § 28.18. He answers, "In the abstract, one might suppose that each part of this question would be answerable on the basis of clear authority. But the fact is that the Supreme Court has managed to leave open nearly all parts of the question." 4 Davis, Administrative Law Treatise, p 93 (1958).

■ The contentions that petitioners wish to have heard by the Court of Appeals are that the Welfare Division's order is not supported by the evidence and is contrary to federal and state law and regulation. We conclude that failure to provide for judicial review

L Rev 3, 104-113 (1971). Huffman v. Boersen, 406 US 337, 92 S Ct 1598, 32 L Ed2d 107, decided May 15, 1972, also does not solve the problem.

of such administrative orders upon such grounds is no violation of the Constitution.

■ The Oregon Constitution reads, "* * * every man shall have remedy by due course of law for injury done him in his person, property, or reputation." Art I, § 10. We also conclude that this provision is not violated by not providing judicial review of the Welfare Division's orders in this case. *White v. State Ind. Acc. Com.,* supra (227 Or 306), may have so held.

■ For the above-stated reasons, we hold that there is no violation of the due process clause or the Oregon Constitution to require the payment of filing fees in order to secure judicial review of the Welfare Division's orders.

Petitioners also contend that the requirement of the payment of a filing fee deprives them of their rights under the Equal Protection Clause of the Fourteenth Amendment. Their argument is that persons able to pay the fee can obtain judicial review; therefore, it is violative of the Equal Protection Clause if persons unable to pay the fee cannot obtain review.

Petitioners are attempting to apply the rationale of *Griffin v. Illinois,* 351 US 12, 76 S Ct 585, 100 L Ed 891 (1956), to this case. *Griffin v. Illinois* held that the Equal Protection Clause required that the state furnish a transcript of trial without charge to an indigent defendant convicted of a crime in order that he could properly present his appeal.

*Griffin* was a criminal case in which the defendant was faced with a loss of liberty. A majority of the United States Supreme Court has not applied the equal protection reasoning to civil cases. A majority of the Court, in *Boddie v. Connecticut,* supra

(401 US 371), a civil case, chose instead to apply due process reasoning.

The equal protection reasoning has been applied by some state courts to civil cases. *Jeffreys v. Jeffreys*, 58 Misc2d 1045, 296 NYS2d 74 (1968), (divorce). Particularly, has this reasoning been applied in cases involving the termination of parental rights. *In re Interest of Chambers*, 261 Iowa 31, 152 NW2d 818 (1967). We recognized in *State v. Jamison*, 251 Or 114, 444 P2d 15, 1005 (1968), that termination of parental rights, while classified as noncriminal, was attended with such drastic consequences that the state has an obligation to furnish counsel to indigent parents.

The application of the equal protection rationale to this case is necessarily limited to the waiver of the requirement of filing fees. The implication of petitioners' argument and some of the authority cited in support thereof, however, would extend the rationale to encompass all of the rights guaranteed in criminal cases. The state would be required to provide at its expense counsel, funds for investigation, transcripts of testimony, etc. See *Lee v. Habib*, 137 US App DC 403, 424 F2d 891, 898, 902 (1970).

■ We are of the opinion that the Equal Protection Clause does not require us to strike down the law that requires the payment of a filing fee from everyone. Using the phraseology of the United States Supreme Court, we are of the opinion that the right to obtain judicial review of a ruling of the State Welfare Division is not such a "fundamental personal right" that it is in violation of the Equal Protection Clause to make such right dependent upon the ability to pay a $25 filing fee. *Weber v. Aetna Casualty & Surety*

*Company,* 406 US 164, 92 S Ct 1400, 31 L Ed2d 768 (1972).

Petitioners also contend that apart from the Bill of Rights, this court has the inherent right to waive the payment of filing fees by indigents. In *Therkelsen v. Therkelsen,* 35 Or 75, 78-79, 54 P 885, 57 P 373 (1898), we held this court has no authority to waive the payment of the required filing fee for this court. As petitioners point out, however, a number of courts, both in the past and presently, have held that a court does have inherent power to waive the payment of filing fees by indigents. For example, *Martin v. Superior Court,* 176 Cal 289, 168 P 135, 138 (1917); *Ferguson v. Keays,* 4 Cal 3d 649, 94 Cal Rptr 398, 484 P2d 70 (1971); *O'Connor v. Matzdorff,* 76 Wash2d 589, 458 P2d 154 (1969).

The reasoning of *Martin v. Superior Court,* supra (176 Cal 289), is that the legislature has made the common law of England, to the extent it is not repugnant to the Constitution, or laws or decisions, the law of California, and the applicable English common law is that a court had the inherent power to permit an indigent applicant to proceed in forma pauperis.

The Washington court similarly so reasoned recently in *O'Connor v. Matsdorff,* supra (76 Wash2d 589). The Washington court also reasoned that the justice court had the inherent power to waive the payment of filing fees in a replevin action brought by an indigent because waiver was essential to *"the due administration of justice."* 76 Wash2d at 605.

■■ Oregon also has the rule that the common law of England is part of the law of Oregon if it is not in conflict with the Constitution or legislation. *Peery v.*

*Fletcher,* 93 Or 43, 53, 182 P 143 (1919). We are of the opinion, however, that the fact that English courts two centuries ago decided they had the inherent power to permit indigents to commence litigation without the payment of filing fees is too slender a reed to support the most drastic action a court can take, that is, acting in defiance of a specific, unambiguous legislative command. The legislature has provided that a filing fee is required. In the case of appellate filing fees it has made no exceptions for indigents.

We accept the doctrine of inherent power for the judiciary; however, we view it as a more limited source of power than apparently the California and Washington courts do. In *State ex rel Bushman v. Vandenberg,* 203 Or 326, 335, 276 P2d 432, 280 P2d 344 (1955), we quoted with approval from Rottschaefer, Constitutional Law, 56 (1939):

> " '* * * The judicial power thus conferred is generally held to include not merely that of deciding cases but also incidental powers necessary to the effective performance of that primary function.' "

We look upon the doctrine of inherent judicial power as the source of power to do those things necessary to perform the judicial function for which the legislative branch has not provided, and, in rare instances, to act contrary to the dictates of the legislative branch. We do not, however, view the legislative requirement of a filing fee as a prerequisite to processing an appeal from an administrative ruling as such a restriction upon the performance of a judicial function that it must be ignored. It would be incongruous to hold that the requirement of a filing fee is not contrary to the Due Process and Equal Protection Clauses but is such a restriction upon the performance

of the judicial function that the court can ignore the legislative command under the guise of exercising its inherent power.

The petition may not be filed without payment of the required fee.

McALLISTER, J., concurs in the result.